OPINION *Page 2 
{¶ 1} Plaintiff-appellant, Carl Bell, appeals from the December 15, 2006, Judgment Entry Decree of Divorce issued by the Fairfield County Court of Common Pleas Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant, Carl Bell, and appellee, Kimberly Bell, were married on December 3, 1988. Two children were born as issue of the marriage. They are Justin Bell (DOB 6/12/89) and Krista Bell (DOB 7/3/92).
 {¶ 3} On July 1, 2005, appellant filed a complaint for divorce against appellee. Pursuant to a Judgment Entry filed on October 6, 2005, the trial court designated appellee the residential parent and legal custodian of the minor children and granted appellant companionship. The trial court also ordered appellant to pay temporary child support in the amount of $766.33 per month, plus processing, and temporary spousal support in the amount of $300.00 a month, plus processing. A child support worksheet attached to the Judgment Entry indicated that appellant's gross yearly income was $57,571.90 and appellee's was $27,398.00. Appellant's household income after support was $43,624.50 and appellee's household income after support was $39,646.00.
 {¶ 4} On March 27, 2006, the parties filed a Shared Parenting Plan with the trial court. The Plan stated, in relevant part, as follows:
 {¶ 5} "V. Children Support. Carl [appellant] shall pay child support in the amount of $766.33 plus a processing charge each month, by wage withholding through the Fairfield County Child Support Enforcement Agency. *Page 3 
 {¶ 6} "Carl's duty to pay support shall continue until the children (1) reach the age of eighteen (18) or continue to attend an accredited high school on a full-time basis, whichever is later; (2) are otherwise emancipated; (3) die; or, (4) Carl dies, whichever of these enumerated events occurs first."
 {¶ 7} No child support guideline worksheet was attached to the Shared Parenting Plan.
 {¶ 8} A final hearing was held on April 26, 2006. At the hearing, the parties indicated to the trial court that all issues had been resolved except for the allocation of marital debt and spousal support. Appellant's counsel also indicated to the trial court that "the actual property household goods have been divided, if not equally, the parties have agreed equitably. . ." Transcript at 6. The following testimony then was adduced at the hearing.
 {¶ 9} At the hearing, appellant testified that all issues concerning the children had been resolved. Appellant testified that his gross income from his employment with the United States Postal Service, according to his 2005 W2, was $5,227.67 a month and that his monthly income after taxes for 2005 was $4,650.73. Appellant testified that he paid $605.00 a month in rent to the woman with whom he was living. When questioned about rent, appellant indicated that the amount of rent he was paying to his girlfriend was the same amount he was paying for an apartment before he moved in with her. Appellant testified that the two had a written rental agreement, although the same was not notarized or witnessed. Appellant's name did not appear on any utility bills at his girlfriend's house. *Page 4 
 {¶ 10} Appellant also testified that he spent $450.00 a month on food and clothing, and $245.00 a month on a truck, and $200.00 for a Nissan Altima. Testimony was adduced that appellant paid $241.24 a month in health insurance for himself and the minor children, $330.00 a month on gas and repairs and $150.00 a month for his share of the utilities and trash. According to appellant, he paid $110.00 a month on telephone and cable bills and $100.00 a month for car insurance.
 {¶ 11} At the hearing, appellant was questioned about debt. He testified that, during the marriage, the parties had taken out two (2) loans through his Thrift Savings Plan, which is similar to a 401(k), and that the loans were for "purchases at the house, I don't' know, to pay off other bills." Transcript at 19. Appellant testified that $700.00 a month was deducted directly from his paycheck to repay the loans. As of June of 2005, the two loans had a combined balance of $17,816.98. Appellant testified that the loans were used to cover marital debt and that his family and appellee benefited from the same.
 {¶ 12} Appellant also testified that the parties had a NAPUS Visa with a balance of $10,000.00 and that he paid $229.00 a month toward the same. When asked what was purchased with the NAPUS Visa, appellant testified that it was used to make car or house payments or for vacations. He also testified that he was paying $150.00 a month on a Bank One Visa, approximately $300.00 a month on some personal loans, and that he had paid off an overdraft line of credit in the amount of $1,835.00 that constituted marital debt. When questioned, appellant testified that his total monthly expenses were approximately $5,073.57 and that he was in the hole $450.00 to $500.00 a month after expenses. *Page 5 
 {¶ 13} Appellant testified that the parties had sold the marital home and split the proceeds in half. Evidence was adduced that the balance on appellant's Thrift Plan account was $69,441.76 as of June 24, 2005. Appellant further testified that while the parties' property division was not necessarily equitable, he agreed that the division was appropriate. When asked what happened to the parties' household goods when the martial home was sold, appellant testified that he received about a half a room's worth of furniture out of a four bedroom house.
 {¶ 14} On cross-examination, appellant testified that his yearly income was around $60,000.00. He further testified that he had been employed with the Postal Service for 15 years and that he worked overtime during the marriage so that appellee could stay at home with the parties' children. Appellant, who was 38 years old as of the time of the hearing, testified that he was in good health, but that he took medicine for high blood pressure, and that he was a high school graduate who had attended college for three semesters.
 {¶ 15} On cross-examination, appellant was questioned about his living arrangements. He testified that he lived with a woman named Michelle and her two children and that she earned approximately $35,000.00 a year.
 {¶ 16} At the final hearing, appellee testified that the two married shortly after high school and that, after the two had children, they agreed that, for a period of time, she would stay home and raise them. Before the children were born, appellee worked as a store clerk at JCPenney and in a hair salon while going to cosmetology school. Appellee also testified that, during the marriage, she worked part-time at a catalog call center taking orders and also worked part-time in the customer service department of *Page 6 
Safe Auto Insurance. In 2000, appellee started working for State Farm and, as of the time of the hearing, was still employed there.
 {¶ 17} Appellee testified that she worked between 30 and 35 hours a week and that she earned $15.33 an hour and received commissions. In 2005, appellee earned a total of $28,434.33 including a $356.72 bonus. Appellee testified that she did not look for any part-time work because she did not want to leave her children home alone in the evenings. She further testified that she had the potential to earn more in commissions. In addition to her salary, appellee was receiving $300.00 a month in spousal support and $766.33 a month in child support.
 {¶ 18} With respect to monthly expenses, appellee testified that her rent was $1,050.00 a month[1] and that her vehicle payment was $252.00 a month. When asked, appellee admitted that she had the use of the Altima until she purchased her current car, but that she returned such car to appellant at his request. Appellee also testified that she paid $130.00 a month for health insurance, $55.00 a month for utilities, $40.00 a month for telephone, $75.00 a month for cable and computer and approximately $100.00 a month for insurance. According to appellee, her personal monthly expenses totaled $1,557.00. However, she testified, that such expenses did not include the expenses for the two minor children and other expenses that were not listed on her financial statement. According to appellee, she also spent $500.00 a month for food, $100.00 a month on gas, $120.00 a month on school lunches, $80.00 a month for a cell phone and $500.00 a month on clothing. She testified that she was in the hole approximately $200.00 a month after expenses. Appellee also testified that she did not have any type of retirement account. She further testified that appellant benefited from *Page 7 
the fact that she worked only part-time when the children were young because he was able to concentrate on his career with the Postal Service.
 {¶ 19} On direct examination, appellee testified that she was considering going to Columbus State and obtaining an associates degree in marketing.
 {¶ 20} On June 16, 2006, the trial court filed Findings of Fact and Conclusions of Law. The trial court, in the same, noted that appellant was residing with his girlfriend, who earned approximately $35,000.00 a year and that appellant's total household income was at least $97,732.04. The trial court further stated, in relevant part, as follows:
 {¶ 21} "Conclusions of Law: Pursuant to ORC § 3105.18, an award of spousal support is appropriate and reasonable. Plaintiff earns 2.2 times more than the defendant does. Plaintiffs household income is 3.43 times greater than the household income of the defendant. Defendant sacrificed her potential career and earning potential by staying home to care for the children. Plaintiff benefited from this. Plaintiff [sic] will need to further her education to help increase her income to support herself and two (2) teenagers.
 {¶ 22} "Wherefore, the Court awards to defendant spousal support in the amount of $800 per month for a period of six (6) years, her portion of the retirement plan of the plaintiff and guideline child support for the parties two (2) children."
 {¶ 23} The trial court, in its Findings of Fact and Conclusions of Law, did not include a division of marital debt. The trial court, in its Findings of Fact and Conclusions of Law, also directed appellee's counsel to prepare the final entry "with all statutory *Page 8 
attachments including child support guideline worksheet and the division of property orders. . ."
 {¶ 24} Pursuant to a Judgment Entry Decree of Divorce filed on December 15, 2006, the trial court ordered appellant to pay appellee $800.00 a month in spousal support for a period of six (6) years, which was non-modifiable and not under the continuing jurisdiction of the court. A Shared Parenting Decree that was filed with the trial court on the same date approved the Shared Parenting Plan that was filed with the trial court on March 27, 2006.
 {¶ 25} Appellant now raises the following assignments of error on appeal:
 {¶ 26} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN THE AWARD OF SPOUSAL SUPPORT.
 {¶ 27} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS ORDER OF CHILD SUPPORT.
 {¶ 28} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT MAKING FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING DIVISION OF THE MARITAL ESTATE."
 I {¶ 29} Appellant, in his first assignment of error, argues that the trial court abused its discretion in its award of spousal support to appellee. We agree.
 {¶ 30} As is stated above, the trial court, in its December 15, 2006, Judgment Entry Decree of Divorce, ordered appellant to pay appellee $800.00 a month in spousal support for a period of six years. *Page 9 
 {¶ 31} A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard. Cherry v.Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 541 N.E.2d 597. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E2d 1140.
 {¶ 32} R.C. 3105.18(C)(1)(a) through (n) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment and duration of spousal support. These factors are:
 {¶ 33} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 34} "(b) The relative earning abilities of the parties;
 {¶ 35} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 36} "(d) The retirement benefits of the parties;
 {¶ 37} "(e) The duration of the marriage;
 {¶ 38} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; *Page 10 
 {¶ 39} "(g) The standard of living of the parties established during the marriage;
 {¶ 40} "(h) The relative extent of education of the parties;
 {¶ 41} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 42} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 43} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 44} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 45} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 46} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 47} Appellant, in his first assignment of error, initially argues that the trial court abused its discretion in awarding spousal support because it did not consider all of the statutory factors in R.C. 3105.18, which is cited above. A trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C), and we may not assume the evidence was not considered. Barron v.Barron, Stark App. No. 2002CA00239, 2003-Ohio-649 at paragraph 25. The statute directs the court to *Page 11 
consider all fourteen factors, and a reviewing court will presume the trial court did so absent evidence to the contrary. Cherry v.Cherry (1981) 66 Ohio St.2d 348, 421 N.E.2d 1293. The court must only set forth sufficient detail to enable a reviewing court to determine the appropriateness of the award. See, for example, Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197.
 {¶ 48} Upon our review of the trial court's Findings of Fact, we find that there is sufficient detail to enable us to determine the appropriateness of the spousal support award. The trial court made findings as to the parties' education, retirement benefits, expenses, incomes and the duration of the parties' marriage.
 {¶ 49} However, we concur with appellant's argument that the trial court erred in attributing his girlfriend's income as household income to him when considering the award of spousal support. As is stated above, the trial court, in its Findings of Fact and Conclusions of Law, made a point of noting in its Conclusions of Law that appellant's household income, including the $35,000.00 that his girlfriend earned, was 3.43 times greater than appellee's household income. The trial court apparently added appellant's $62,732.04 salary to his girlfriend's $35,000.00 salary to arrive at a total household income of "at least $97,732.04." The trial court then divided $97,732.04 by appellee's $28,434.00 salary and determined that appellant's household income was 3.43 greater than appellee's household income.
 {¶ 50} However, there is no evidence in the record that appellant received any income or support from his girlfriend. There was evidence that appellant had borrowed money from his girlfriend which he said must be paid back. There was testimony before the trial court that appellant paid rent to his girlfriend and shared in living expenses such *Page 12 
as utilities. Based on the facts and circumstances in this case, we find that the trial court abused its discretion in considering appellant's girlfriend's yearly income in calculating spousal support.
 {¶ 51} Based on the foregoing, appellant's first assignment of error is sustained.
 II {¶ 52} Appellant, in his second assignment of error, contends that the trial court abused its discretion in its order of child support. We agree.
 {¶ 53} A trial court has considerable discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Pauly v.Pauly, 80 Ohio St.3d 386, 390, 1997-Ohio-105, 686 N.E.2d 1108. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Moreover, in applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court.Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,614 N.E.2d 748.
 {¶ 54} Appellant, in his second assignment of error, argues that the trial court erred in ordering child support because the trial court did not present a child support computation worksheet. The trial court, in its Findings of Fact and Conclusions of Law, awarded appellee "guideline child support for the party's two (2) children." The trial court also directed appellee's counsel to prepare a Final Decree of Divorce that included a child support guideline worksheet. *Page 13 
 {¶ 55} At the time a trial court orders child support, a child-support-guideline-computation worksheet must be completed and made a part of the trial court's record. See Cutlip v. Cutlip, Richland App. No. 02CA32, 2002-Ohio-5872, 2002 WL 31412399 at paragraph 7, citingMarker v. Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496
at paragraph one of the syllabus; R.C. 3119.022.[2] Failure to complete and include the worksheet in the record constitutes reversible error. McClain v.McClain (1993), 87 Ohio App.3d 856, 858, 623 N.E.2d 242. The guideline amount is rebuttably presumed to be the correct amount of child support due, although deviation from the guidelines is addressed in the worksheet. See Marker, supra, and R.C. 3119.03; R.C. 3119.022.
 {¶ 56} While a child support guideline worksheet was attached to the trial court's October 6, 2005 Judgment Entry, the parties' incomes had changed since the same was prepared, and spousal support ordered by the trial court was different than spousal support under the temporary orders. No child support guideline worksheet was part of the trial court's December 15, 2006, Judgment Entry Decree of Divorce, although the trial court had directed appellee's counsel to attach a child support guideline worksheet to the final entry. Nor did the trial court indicate in either its findings or the Judgment Entry what income figures were to be used to determine child support.
 {¶ 57} Appellant's second assignment of error is, therefore, sustained. *Page 14 
 III {¶ 58} Appellant, in its third assignment of error, argues that the trial court erred by not making findings of fact and conclusions of law concerning the division of the marital estate. We agree.
 {¶ 59} R.C. 3105.171(G) provides:
 {¶ 60} "In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage."
 {¶ 61} The trial court, in its Findings of Fact and Conclusions of Law, neither mentioned the marital debt nor divided the same. In the December 15, 2006 Judgment Entry Decree of Divorce, which was prepared by appellee's counsel, the trial court stated, in relevant part, as follows:
 {¶ 62} "Carl Bell shall pay, and hold Kimberly Bell harmless on all debts incurred during the marriage that are in his name, Kimberly Bell shall pay, and hold Carl Bell harmless on all debts incurred during the marriage that are in her name. Carl Bell shall pay all debts that are incurred by him from this day forward, including any debts or expenses incurred after the separation and prior to the granting of divorce. Kimberly Bell shall pay all debts that are incurred by her from this day forward, including any debts or expenses incurred after the separation and prior to the granting of divorce."
 {¶ 63} Because the trial court, in its entry, did not indicate what debts it was referring to or assign a value to the same, we are unable to determine if the trial court abused its discretion in allocating the marital debt. See, for example, Brent v. Brent, *Page 15 
Licking App. No. 05-CA-85, 2006-Ohio-1960 and Nickle v. Nickle, Licking App. No. 2004CA00072, 2005-Ohio-3050.
 {¶ 64} Appellant's third assignment of error is, therefore, sustained.
 {¶ 65} Accordingly, the judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is reversed and this matter is remanded for further proceedings.
Edwards, J., Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division is Reversed and Remanded for further proceedings. Costs assessed to appellee.
[1] Appellee testified that she had a fourteen (14) month lease, but that two (2) months were free.
[2] We note that Marker addresses prior R.C. 3113.215, which the General Assembly repealed on March 22, 2001. However, the modern version of the support guideline statute, R.C. 3119.022, continues to mandate that a court or agency calculating child support "shall use a worksheet." Therefore, we find the rule of Marker applicable to R.C. 3119.022. *Page 1